54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Tsilina MOTEV, doing business as Motev Stables, Plaintiff-Appellant,
James R. Bryan, Jr., also known as Bud Bryan and Jill Bryan,
doing business as B & J Bryan Quarter Horses, Plaintiffs,
v.
Robert Dean JOHNSON, doing business as Bob Johnson Training
Stable; Allen Pressnell and Diane Pressnell, doing business
as Pressnell Farms; Cecil Lynch; R. T. Smith Lumber Company,
Defendants-Appellees.
 No. 94-5323.
 United States Court of Appeals, Sixth Circuit.
 May 11, 1995.
 
 Before: MERRITT and SILER, Circuit Judges; and EDMUNDS, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Tsilina Motev, appeals the order dismissing her diversity breach of contract action as a sanction for her failure to comply with discovery orders. Motev contends that the district court abused its discretion in ordering dismissal of her complaint with prejudice. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 Motev was the owner of a quarter horse named Colors Impression. She contracted with plaintiffs Jill and James Bryan of B & J Bryan Quarter Horses, a business located in Alabama, to stand Colors Impression as a stud horse for several years. The Bryans were to receive a portion of the profits earned by Colors Impression but had no ownership interest in the horse.
 
 
 3
 On August 12, 1990, the Bryans delivered Colors Impression to defendant Robert Dean Johnson, who runs the Bob Johnson Training Stables in Columbia, Tennessee. The training stables are located on Pressnell Farms, which is owned by defendants Allen and Diane Pressnell. On August 22, 1990, several horses at the stable, including Colors Impression, became ill. Unfortunately, Colors Impression was euthanized because of the severity of its illness and its inability to recover. Motev claimed the cause of the illness was from black walnut shavings present in the stall bedding. Johnson had caused defendant Cecil Lynch to deliver a truckload of wood shavings to the stables for use as bedding. These shavings, purchased from defendant R.T. Smith Lumber Company, included black walnut shavings containing toxins which may cause laminitis in a horse.
 
 
 4
 On June 20, 1991, Motev and the Bryans filed the present suit against the defendants, alleging negligence and/or breach of warranty for allowing Colors Impression to come in contact with black walnut shavings. A scheduling order was entered by the district court on October 7, 1991, establishing an April 17, 1992, discovery cut-off date and deadline for filing discovery motions. The trial was set for June 16, 1992.
 
 
 5
 After several cancelled attempts, Motev was finally deposed on April 1 and 2, 1992, during which she agreed to produce 36 exhibits. There was no fixed time for production. Upon motion by the defendants, the district court entered an order requiring their production on or before June 15, 1992. After this, some were produced and many were not. The June trial date was rescheduled for December and was later continued indefinitely. In a hearing on a motion for sanctions, the magistrate judge found Motev's failure to provide discovery to be willful and in bad faith and recommended the sanction of dismissal of her complaint with prejudice. That recommendation was adopted by the court and the complaint was dismissed.
 
 II.
 
 6
 This court reviews a district court's decision to invoke Rule 37 sanctions for an abuse of discretion. Taylor v. Medtronics, Inc., 861 F.2d 980, 985 (6th Cir. 1988). "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." Beil v. Lakewood Engineering and Manufacturing Company, 15 F.3d 546, 551 (6th Cir. 1994) (citations omitted).
 
 
 7
 Among those factors which this court should consider in determining whether the district court abused its discretion by imposing sanctions are: "(1) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery, (2) whether the dismissed party was warned that failure to cooperate could lead to dismissal, and (3) whether less drastic sanctions were imposed or considered before dismissal was ordered." Beil, 15 F.3d at 552 (quoting Taylor, 861 F.2d at 986 (citing Regional Refuse Systems, Inc. v. Inland Reclamation Company, 842 F.2d 150, 155 (6th Cir. 1988))). Further, the sanction of last resort is dismissal and "[i]t should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault." Beil, 15 F.3d at 552 (citing Taylor, 861 F.2d at 985). The question this court must answer is "not whether this [c]ourt, ..., would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976).
 
 
 8
 After the district court ordered the production of the documents by June 15, 1992, counsel for Motev, through a letter dated June 18, 1992, forwarded documents which were only partially responsive to five of the thirty-six requests. Motev, for the first time, challenged the discoverability of a portion of the documents, claiming they were not relevant. She also claimed, for the first time, that a majority of the documents did not exist, could not be found, or were not in her possession. No further documents were received by the defendants until November 1992.
 
 
 9
 On August 14, 1992, the revised deadline for filing discovery motions established by the district court, the defendants filed a motion seeking sanctions against Motev for her failure to comply with the court's June 1992 discovery order. Motev responded on August 27, 1992, but did not produce any further documents.
 
 
 10
 In her response, Motev acknowledged the serious consequences which could follow a motion for sanctions. However, she contended that she was only required to produce those documents which were "physically possessed by her." Motev requested that she be permitted to respond to the request for production and agreed to respond accordingly within thirty days. Motev also challenged the discoverability of certain documents she had been previously ordered to produce in the district court's June order. Motev did not provide any further responses nor any documents within thirty days after this response was filed.
 
 
 11
 On November 9, 1992, a pre-trial conference was held by the district court. During this conference, the upcoming hearing on the defendant's motion for sanctions was discussed. The court advised Motev that it could strike pleadings, dismiss her complaint or enter some other order precluding certain evidence. The court further cautioned Motev that she was obligated to search diligently for the documents and could not "sit back and feign ignorance."
 
 
 12
 By letters dated November 18, 19 and 23, 1992, Motev's counsel did produce some additional documents. Included were those that Motev had previously claimed were either nonexistent, lost or not in her possession. Yet all documents had still not been produced.
 
 
 13
 The district court continued the trial date indefinitely and referred the motion for sanctions to the magistrate judge for recommendations. By letters dated December 23 and 30, 1992, Motev produced more documents, but all had not yet been produced. On March 16, 1993, a hearing was held before the magistrate judge. Following this hearing Motev produced a few more documents, yet she still had not produced all of the documents. Again, Motev produced documents that she had previously claimed were either nonexistent, lost, not in her possession or were irrelevant. Of those documents that have yet to be produced, Motev still contends that they are either lost, nonexistent, not in her possession, or irrelevant. One document, the loan financial statement, was produced, but Motev had unilaterally redacted selected portions thereof.[1]
 
 
 14
 Motev's counsel admits that he has never sought any type of clarification of the district court's June order. He also concedes that he has never sought a protective order. The district court concluded that Motev had acted willfully and in bad faith in her refusal to comply with the discovery order.
 
 
 15
 After reviewing the record we find that the district court did not abuse its discretion when it found that the defendants were prejudiced from Motev's refusal to cooperate in discovery. The defendants have incurred additional legal expenses in their vain attempts to obtain the discovery, and both scheduled trial dates were continued as a result of Motev's actions. See Taylor, 861 F.2d at 986. Motev had been personally warned by the district court that continued refusal to cooperate could lead to the sanction of dismissal of her action. Finally, the district court did not abuse its discretion when, after considering other less drastic sanctions, it found them to be inappropriate in this case and that the appropriate sanction was dismissal with prejudice.
 
 
 16
 AFFIRMED.
 
 
 17
 MERRITT, Chief Judge, dissenting in part.
 
 
 18
 As the court says, before imposing sanctions, there must be consideration of the "least drastic sanctions" necessary to accomplish the purpose. I would not dismiss the entire action but rather would allow the case to go forward on liability; but I would limit the damages, if any, to the value of the horse as estimated by defendant's witnesses. All of the abuse concerned discovery material not produced by plaintiff about the value of the horse. The abuse did not concern the facts of liability. I therefore would limit the sanctions imposed to damages. I would limit the proof on damages to defendant's expert proof by allowing the depositions of defendant's experts to be introduced on damages if plaintiff is able to establish liability.
 
 
 
 *
 The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The evidence was that Motev redacted certain portions of this statement on her own accord and had not done so upon advice of counsel. To date, the contents of the redacted portions are still unknown. Motev claims the redacted portions were irrelevant to the case